# Fidelity and Deposit Company of Maryland v. Cobb.

(Decided March 9, 1926.)

## Appeal from Owen Circuit Court.

Attachment—Attachment Debtor Discharging Attachment by Execution of Bond Held Estopped to Show that Attachment was Wrongful (Civil Code of Practice, Sections 221, 260, 264).—Attachment debtor who discharged attachment by execution of bond under Civil Code of Practice, section 221, prior to judgment of dismissal, held estopped to show that attachment was wrongfully obtained under section 264; section 260 being unavailable.

WILLIAM MARSHALL BULLITT, LEO T. WOLFORD, BRUCE, BULLITT, GORDON & LAURENT and J. G. VALLANDINGHAM for appellant.

FRANK C. GREEN and J. L. W. SLAUGHTER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

On October 9, 1923, J. B. Bean brought an action in the Owen circuit court against Munday Cobb to recover damages in the sum of $10,000.00 for the alienation of the affection of his wife. An attachment was taken out and an attachment bond was executed on October 12, 1923, by the Fidelity and Deposit Company of Maryland, as surety therein. The attachment on October 17, 1923, was levied on a Ford automobile and a grey horse, both of which were left in the possession of Cobb. The Farmers' National Bank of Owenton and P. O. Minor were summoned as garnishees. Cobb's account at the bank was overdrawn. Minor owed Cobb a note. On October 31, 1923, Cobb executed a bond under section 221 of the Code and so had the attachment discharged. Cobb then filed his answer to the suit and Bean thereafter dismissed his suit against Cobb without prejudice. Cobb then brought this action to recover damages on the attachment bond against the Fidelity and Deposit Company, the surety in the bond. On the hearing of the case the jury found a verdict for Cobb for $350.00 for his attorneys' fees, $35.00 for loss of time in defending the attachment and $15.00 for the expenses incurred, making a total of $400.00. The court entered judgment on the verdict. The Fidelity and Deposit Company appeals.

Section 221 of the Code is in these words:

"If the defendant, before judgment, cause a bond to be executed to the plaintiff by one or more

sufficient sureties, approved by the court, to the
effect that the defendant shall perform the judgment
of the court, the attachment shall be discharged, and
restitution be made of any property taken under it
or of the proceeds.''

The bond which Cobb executed under this section, by
its very terms, operated to discharge the attachment and
entitled him to restitution of any property taken under
it. His present action is on the attachment bond, which
provides that the plaintiff shall pay to the defendant all
damages which he may sustain by reason of the attach-
ment if wrongfully obtained. The question presented is,
does the discharge of the attachment by the execution of
the bond under section 221 estop Cobb from showing that
the attachment was wrongfully obtained? In section 89,
page 875, 2 R. C. L., after a showing that there is a con-
flict of authorities on the question, this follows:

"Other courts have taken the position that after
giving a bond the defendant cannot attack the va-
lidity of the levy, for the reason that giving the bond
is a waiver of all technical objections to the form
of the levy. And in still other jurisdictions it is held
that the effect of giving a bond operates as a dis-
charge of the attachment by operation of law, that
the undertaking stands in place of the attachment,
and consequently there is no function of a traverse
or trial of it afterward, as the affidavit for attach-
ment has become *functus officio*. Where the bond
is given under a statute requiring an unconditional
promise to perform the final judgment of the court,
it has been held that the defendant is estopped to
raise any question as to the regularity of the attach-
ment proceedings, it being intimated that no estop-
pel arises if the undertaking is made under a statute
which requires only a forthcoming bond.''

See to same effect notes 123 Am. St. R. 1049-50; 12
Ann. Cas. 170-72.

This court is one of the courts that has from the be-
ginning taken this view. In Hazelrigg v. Donaldson, 2
Met. 445, it thus stated the rule:

"When such a bond is executed the attachment
is discharged by operation of law, and the obligors
in the bond are bound unconditionally to perform
the judgment of the court in the action. In an action

to enforce the bond, neither the sufficiency of the grounds for obtaining the order of attachment, nor the liability of the property levied on under the attachment, can be made a subject of inquiry. As the execution of the bond has the effect to discharge the attachment, no question as to the validity of the attachment can afterwards be made in the cause; and as the court, after the bond is executed, has no longer any power or control over the property attached, no claim which any person may have to it can be investigated in the action. When the bond is executed, it stands in lieu of the attachment, and the action proceeds as if no attachment had ever been issued.''

That opinion has been consistently followed since. Bell v. Western, &c., Wrecking Co., 3 Met. 557; Taylor v. Taylor, 3 Bush 118; Miller v. Desha, 3 Bush 212; Lee v. Newton, 87 S. W. 789; Leet, &c., Co. v. Green, 151 Ky. 632.

"According to this construction of the legal effect of the bond, it is obvious that the appellants were concluded by it from controverting the grounds of the attachment." Inman, &c. v. Strattan, &c., 4 Bush 445.

As the execution of the bond discharged the attachment, there could in that action be no inquiry as to whether it was rightfully or wrongfully obtained. By the execution of the bond the defendant waived all objections to the attachment or what had been done under it. He put it out of the power of the plaintiff to establish in that action that the attachment was properly obtained. But for the giving of the bond the plaintiff might by amendment have asserted other grounds in addition to those he had alleged, and might so in the end have sustained the attachment, though the grounds he had alleged, which had been controverted, were not sustained by the evidence. This he could not do after the bond was executed. In addition facts then capable of proof may not be proved after some elapse of time. The Code clearly provides how the attachment issue shall be tried. Section 264 is in these words:

"The trial of the attachment shall be by the court, and the witnesses shall be orally examined, except in cases wherein depositions might be read in an ordinary action."

The trial by the court with the witnesses before it could not be had after the bond was executed; and the right to a trial being expressly waived by the execution of the bond now sued on, the defendant cannot be heard to say that the right he then waived may be asserted in this action and is to be determined by the jury on the facts now shown. It is true section 260 of the Code provides:

"If judgment be rendered in favor of the defendant the attachment shall be discharged."

But there was no attachment when the judgment in this action was entered. It had been discharged by the execution of the bond.

The motion for an appeal is sustained and the judgment is reversed, with directions to dismiss the petition. Whole court sitting.